FOSSIER v. D. H. HOLMES CO., LTD.

———

(February 15, 1932. Opinion and Decree.)
(March 3, 1932. Rehearing Refused.)
(April 25, 1932. Writs of Certiorari and
Review Refused by Supreme Court.)

———

Prowell, McBride & Ray, of New Orleans, attorneys for plaintiff, appellee.

William H. Talbot, of New Orleans, attorney for defendant, appellant.

JANVIER, J. The personal injuries, which form the basis of this litigation, were sustained when the automobile delivery truck which plaintiff was driving was struck and turned over by a similar vehicle owned by defendant and driven by one of its employees in the course and within the scope of his employment.

The scene of the accident was the intersection of French and Louis XIV streets in Lakeview—that section of the city of New Orleans lying along the so-called New Basin canal and limited by City Park avenue on one end and Lake Pontchartrain on the other.

The time at which the collision occurred was just before dark in the very late afternoon or early evening of July 23, 1930.

The district court rendered judgment for plaintiff in the sum of $1,585 and from that judgment defendant has appealed.

The truck driven by Fossier, plaintiff, was proceeding on French street, that of defendant on Louis XIV street and since the latter approached the intersection from the left side of the former, the former, that is the one driven by plaintiff, was, under the pertinent provisions of the traffic ordinance C. C. S. 7490, given the right of way.

Defendant's truck is shown to have entered the intersection at a speed considerably in excess of that permitted by the ordinance. In fact, one witness, driving an

automobile in the rear of defendant's truck, attributed to that truck a speed of 50 miles per hour.

With commendable frankness counsel for defendant concedes that his client's employee was at fault in the matter of speed and also that had the two trucks reached the intersection at about the same time, the other, the one driven by plaintiff, would have been entitled to proceed, but he asserts that the proximate cause of the accident was neither the speed of defendant's truck nor the violation by its driver of the right of way provision of the ordinance and he maintains that the accident, regardless of those faults, would not have occurred but for the carelessness of plaintiff himself in driving his truck into the intersection without looking ahead and directly into the path of defendant's truck when its driver no longer had an opportunity to stop.

In such case the evidence concerning the alleged negligence of plaintiff himself becomes all important and we turn at once to a consideration thereof.

On each truck were two persons. Those on that driven by plaintiff were himself and a delivery boy. They both testify that that vehicle was proceeding slowly and had moderated its speed before entering the intersection.

Those on defendant's truck were a driver and a delivery boy. Though the delivery boy stated that the other truck entered the intersection without stopping, he did not attempt to fix the speed thereof. Dooley, defendant's driver, estimates the speed of the other truck at 25 miles per hour and the speed of the truck he was driving at from 20 to 24 miles per hour.

One witness for defendant, Mrs. Neichel, was not available at the time of the trial, but it was admitted that if she had been placed on the witness stand she would have testified that she lived about 280 feet from the scene of the accident; that as the truck driven by plaintiff passed in front of her house she was impressed by its excessive speed; that she remarked to friends who were with her on the porch, "It is a wonder that some of these trucks going through here, some of these truck drivers and the people in the trucks don't get killed." However, this witness was nearly a square away and both persons on the truck to which she was referring said that it had slowed down before it reached the intersection.

The record in its entirety is not convincing as to the excessive speed of the truck driven by plaintiff and we find ourselves unable to come to any other conclusion than that the proximate cause of the accident was the speed of defendant's truck, combined with the failure of the driver thereof to accord to plaintiff the right of way and combined also with his failure to stop his truck after the danger was or should have been apparent.

An expert, placed on the witness stand by defendant, testified that the truck of defendant, if going at a speed of 25 miles per hour, could be stopped in three feet. This seems to us impossible, but nevertheless, we feel that it could and should have been stopped in at least 20 or 25 feet and, according to both persons on that truck when the other appeared in the roadway ahead it was 25 or more feet away. The driver, Dooley, says "I saw him crossing the road about twenty-five feet from me." The delivery boy fixes the distance at 37 feet.

The fact that the truck on which plaintiff was riding was seen in the intersection at least 20 or 25 feet before defendant's

truck reached it conclusively proves two things: First, that the former truck had entered the intersection first and had pre-empted it and second, that it could not have been going at the excessive speed charged by defendant because if it had, and if it was 25 or more feet ahead of defendant's truck, it would have crossed the intersection and entirely departed from the roadway on which defendant's · truck was approaching before the latter arrived there.

## QUANTUM

Although defendant's counsel seeks to persuade us that the amount allowed plaintiff below was excessive, plaintiff's counsel has answered the appeal and asserts that the award is inadequate and should be increased.

The cost of the x-ray picture and medical charges were correctly fixed at $85 and the remainder of the amount fixed in the judgment, $1,500, was intended as compensation for physical suffering and for alleged permanent injuries.

After the accident plaintiff was first treated by Dr. Emile Bloch, who stated that the injuries consisted of "a lacerated wound of the scalp and forehead, contused left chest ˙wall with traumatic neuritis, intercostal neuritis * * * contused left side of the face, region of the jaw." Such injuries do not appear particularly serious or lasting, but, shortly after ·the accident, it was found that the contusion on the left side of the face and region of the jaw had resulted in so affecting, either the muscles which operate the jaws or in so bruising the bones of the jaws that it was thereafter impossible for plaintiff to open his mouth more than to about one-third of normal. Several doctors attempted to remedy this condition and the preponderance of the expert medical testimony on the subject is to the effect that the condition of which

plaintiff now complains is more psychic than real and that if the sufferer could be persuaded that the jaws are all right and that they could be used the disability would, after a period of use, disappear.

The experts do not contend that plaintiff is shamming or malingering, but that since he really believes that he cannot use his jaws and since he has not used them normally for some time, such belief and such non-use has brought more or less into reality a condition which, at first, was largely imaginary. It also appears probable that if the plaintiff had continued to permit the administering of treatment, which he refused because of pain, the abnormality would in time have disappeared.

An injured person may not refuse to accept treatment which the best medical advisors believe to be necessary and then claim compensation for the additional disability which, in such case, has resulted not so much from the original injury as from the refusal to submit to treatment.

"Where one has been injured, but is advised by competent physicians that the injury can be remedied by an operation that is ordinarily not dangerous, but refuses to submit to the operation, she is not minimizing her damages, and cannot recover for the sufferings which would be avoided by the needed operation. It is incumbent upon the injured person to submit to reasonable treatment, and to follow the advice of competent physicians."

Donovan v. N. O. Ry. & Light Co., 132 La. 239, 61 So. 216 (syllabus), 48 L. R. A. (N. S.) 109.

But, on the other hand, it cannot be said that a person who has been injured and because of his bona fide conviction that his injury has rendered him incapable of performing some normal physical function, has actually lost his ability to perform such function, has not sustained a real damage.

It may be that plaintiff may never recover the normal use of his jaws, in which event the amount awarded would seem to be most moderate. On the other hand, we believe that the expert opinion preponderates that the treatment, if submitted to, will in time effect a cure and if so, an increase in the award would not be justified.

Our brother below no doubt considered all these matters and, in an effort to do substantial justice, fixed the amount of the judgment at a figure which we are unable to say is manifestly incorrect.

The judgment appealed from is affirmed.