## ST. LOUIS S. W. RY. CO. v. DAVIS.

### No. 14405.

United States Court of Appeals
Fifth Circuit.

May 15, 1953.

Rehearing Denied July 27, 1953.

John M. Madison, Shreveport, La., Wilkinson, Lewis & Wilkinson, Shreveport, La., for appellant.

Val Irion, Shreveport, La., Jackson, Mayer & Kennedy, Myers, Gatti & Egan and Lunn, Irion, Switzer, Trichel & Johnson, all of Shreveport, La., of counsel, for appellee.

Before HOLMES, STRUM and RIVES, Circuit Judges.

STRUM, Circuit Judge.

This is an appeal from a judgment awarding damages to the plaintiff below, appellee here, for personal injuries suffered by him when the end gate of a "drop end," gondola type, railroad car fell inward upon the plaintiff, crushing his right leg and inflicting extensive and permanent injuries.[1]

The end gate, made of metal and weighing several hundred pounds, forms the end of the body of the car. It is hinged at the bottom, and is normally held in a vertical position by heavy metal latches at the top which prevent the gate from falling inward, while the frame of the car prevents it from falling outward. Of course, when the car is fully loaded, the cargo also prevents the gate from falling inward, even though the latches are not fastened. Without one of these supports, however, the heavy door will fall inward when slight pressure, or weight, is applied to it in that direction.

The trial court found that the end gate here in question was "sprung" out of shape so that the latches could not properly close, besides which at least one of the latches was in bad order. Plaintiff was one of a crew of laborers who had just finished unloading a cargo of large rocks from the car. Plaintiff was climbing out over the end gate to leave the car, in like manner as he had entered it, when the end gate fell inward upon him, pinning him to the floor of the car, with the results already stated.

The gondola car was one of several delivered by Missouri Pacific Railroad Company (not the defendant) to the consignor of the rocks, for loading and shipment to various consignees. After the car in question was loaded, Missouri Pacific switched

1. The action was originally commenced by the plaintiff, a minor, through this tutrix, but plaintiff has now come of age and has been substituted as a plaintiff in his own right.

and delivered it to the defendant, St. Louis Southwestern Railway Company, on one of the latter's exchange tracks some five miles distant from the loading point, near North Little Rock, Arkansas. The defendant, Southwestern, issued its own through bill of lading, and paid Missouri Pacific $11.22 as switching charges. No bill of lading was issued by Missouri Pacific, the switching movement being handled on a switching order. From the exchange point, the shipment travelled to destination entirely over the lines of the defendant.

The defendant, Southwestern, inspected the car when it received it at its exchange track, inspected it several times during transit, and again at Bossier City, Louisiana, just before delivery to the consignee at nearby Fordell, Louisiana. No defect was discovered, and no notice was given to the consignee that the end gate, or the latches which normally held it in position, were in bad order.

The trial judge, sitting without a jury, found that the defective condition of the end gate and latches existed not only when the car was placed for unloading, but also when it was delivered to the shipper; and that when it was spotted by the defendant for unloading, the end gate was held erect only by the weight of the cargo against it, the metal latches not being properly fastened. Upon these findings, the trial judge held that plaintiff's injuries were caused by the concurring negligence of the shipper, of plaintiff's employer, and of the defendant, and that if any of these had performed their duty of inspection and warning, the injury would not have occurred.

Pointing out that it did not own the gondola car, nor furnish it to the shipper, appellant contends that it is only a receiving carrier, not subject to the high degree of care imposed upon an initial carrier, and that it has fully discharged its duties as a receiving carrier under the laws of Louisiana, where the cause of action arose. Plaintiff asserts that the defendant, as a terminal carrier, was negligent in delivering the car in a dangerous condition which a reasonably careful inspection would have disclosed.

It is unnecessary for us to determine whether or not defendant was the initial carrier, with the duties pertaining to that relationship. We agree with the trial judge that the defendant did not discharge its duty even as a receiving or terminal carrier, which admittedly it was.

In Jacob v. Illinois Cent. R. Co., 133 La. 735, 63 So. 306, the Supreme Court of Louisiana, where this cause of action arose, rejected the contention that a connecting carrier is required to make a complete and thorough inspection in every detail of every freight car which it receives from another railroad while in transit, but held that it is the duty of a receiving carrier to make a reasonably careful inspection of cars received from another carrier, in order to ascertain their condition. See also Franklin v. Illinois Cent. R. Co., La. App., 13 So.2d 125. It follows, of course, that if such an inspection, made by a competent inspector, would disclose a defective condition in the car, a terminal carrier would be liable for injuries proximately caused by its failure to discover such condition and warn the consignee of the danger. Recovery was denied the plaintiffs in the Jacob and Franklin cases, supra, because the defects there complained of were latent, and not discoverable by a reasonably careful inspection.

Here, however, the defective condition was open and patent, and it is apparent that no reasonably careful inspection was made. The latches which hold the end gate in an upright position have a heavy metal safety device, about the size and thickness of a man's hand, which locks the end door latches, and holds them in a secure position. When the safety lock is properly fastened, it folds down through a slot into the interior of the car so that it is virtually out of sight, showing that the end door is secure. But when the safety lock is in an "open" or insecure position, it protrudes outward from the body of the car, so that it is readily apparent to an inspector walking along the ground, even upon a casual glance, that the safety lock is not holding, and that the door is insecure. This case is factually distinguishable from Chicago

R. I. & P. R. Co. v. McClanahan, 5 Cir., 173 F.2d 833.

The trial judge found that the defendant failed in its duty to make the reasonably careful inspection required of even a connecting or terminal carrier, which would have readily disclosed the dangerous condition. The evidence supports the finding. It appears that the most casual inspection would have disclosed that the top latches were not fastened, so that an inspector would know that slight pressure would cause the gate to fall when the cargo was removed, which is apparently what happened. The evidence discloses no contributory negligence on the part of plaintiff. He was unfamiliar with the end gate mechanism of this car; was only nineteen years old and largely illiterate, and was injured on the first day he worked on this job.

The findings of the trial judge being supported by the evidence, and no error of law appearing, the judgment appealed from is

Affirmed.