111 So.2d 837 (1959)
Mrs. Trebie M. JENKINS et al., Plaintiffs-Appellants,
v.
AMERICAN AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.
No. 8965.
Court of Appeal of Louisiana, Second Circuit.
May 1, 1959.
Rehearing Denied May 27, 1959.
*838 Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, for plaintiffs-appellants.
*839 Jackson, Smith, Mayer & Kennedy, Shreveport, for defendant-appellant.
HARDY, Judge.
This is an action by plaintiffs, husband and wife, for the recovery of damages resulting from injuries sustained by plaintiff wife in an automobile accident while a guest passenger in a car which was struck by a vehicle driven by a Mrs. Corley. The defendant is the liability insurer of the Corley automobile. The case was tried before a jury which returned a verdict in the sum of $10,000 in favor of plaintiff wife and $9,250 in favor of plaintiff husband. After signing the judgment, and upon argument and consideration of defendant's motion for a new trial, the district judge ordered the plaintiffs to enter remittiturs in the sum of $2,500 each, or to suffer the penalty of an order for a new trial. Counsel for plaintiffs entered the remittiturs, under protest, and, after signing of judgment for the reduced amounts, entered orders of appeal, which have been perfected to this court. The defendant has also appealed from the judgment below.
The sole issue which is presented to this court by the respective appeals of plaintiffs and defendant relates to the quantum of the award, plaintiffs contending that the amounts of the judgments should be substantially increased and defendant contending that the amounts should be substantially reduced.
The accident occurred near the hour of noon on June 9, 1957, and the plaintiff, Mrs. Jenkins, was the only one of the five occupants of the car who sustained injury. Mrs. Jenkins was taken to the Highland Sanitarium where she was examined by Dr. Delgado, whose report shows that he found "a small bump on head and knee," and advised observation for further symptoms, despite which recommendation Mrs. Jenkins left the hospital on the day of the accident and returned to her home in Ringgold. On the following day she returned to her duties as a saleslady in the employ of Wilson's Department Store in Ringgold, where she continued to work regularly for some ten hours per day, six days per week, until the 15th of August, something more than two months after the accident. Mrs. Jenkins testified that she was forced to discontinue her work because she grew tired and could not physically "hold out," despite the fact that she was given light duties because she was unable to stand on her feet for any length of time. In the early part of August Mrs. Jenkins consulted her family physician, Dr. Eichelberger of Ringgold, whose statement, introduced in evidence, indicated that since Mrs. Jenkins had shown little improvement during the period of two months following the accident, he concluded she required the services of an orthopedic specialist, and, accordingly, she was referred to Dr. E. C. Simonton of Shreveport, who first examined her on August 22, 1957.
Dr. Simonton testified on behalf of plaintiff on trial of the case, which was held in October, 1958, almost exactly sixteen months following the accident. The witness testified, in considerable detail, as to the results of ten examinations of plaintiff over the period from August, 1957, to September, 1958. Summarizing the conclusions of this witness, based upon his very thorough examinations, Dr. Simonton found that Mrs. Jenkins had sustained a sprain to the low back, which had aggravated a pre-existing scoliosis and a pelvic tilt, an injury to the left knee, diagnosed as a tear of the medial meniscus, and a slight whiplash injury which caused some pain in the cervical area of the neck.
On a number of occasions since the accident Mrs. Jenkins has sustained severe falls, resulting from the buckling and giving way of the left knee, which is directly attributable to the injury sustained in the accident. As the result of a fall which occurred in early August, 1958, Mrs. Jenkins was hospitalized for the treatment of three fractured ribs and a costochondral and sternochrondral separation of the rib cartilage at the sternum.
*840 On trial of the case defendant tendered the testimony of Dr. Willis J. Taylor, an orthopedic specialist, who made one examination of Mrs. Jenkins on April 28, 1958. Strangely enough, the testimony of this witness largely agrees with that of Dr. Simonton.
Our examination of the record convinces us that by far the most serious injury suffered by Mrs. Jenkins was that which caused the tear of the medial meniscus of the left knee. This injury has not only resulted in considerable pain and inconvenience but, as above noted, has been directly responsible for several serious falls which have caused additional injuries and pain. However, with respect to this injury, Dr. Simonton testified that after his examination in April, 1958, approximately ten months following the accident, at which time he diagnosed the condition of the knee, he also recommended the correction of this condition by the performance of a menisectomy, the surgical excision of the torn medial cartilage. According to the testimony of both medical experts, this operation is not regarded as presenting any serious danger to the patient and the expected results are almost unfailingly successful.
Counsel for plaintiff strenuously argues that the recommended surgical procedure must be classified as a major operation performed under general or spinal anaesthesia, accompanied by a measurable risk, and that success cannot be "guaranteed." From a purely technical standpoint these contentions are all correctly asserted, but, to our minds, they are almost totally lacking in any weight of reason which would be persuasive. According to the record, and as urged by counsel in argument and brief, the plaintiff, Mrs. Jenkins, cannot rely upon the steady support and adequate use of her left leg; she has already sustained several falls, it is to be expected she will sustain many more, and, unquestionably, the knee will grow worse instead of better. The fact remains that all of this discomfort, instability, pain and danger of continuing deterioration could be avoided by submission to what is regarded by competent specialists in orthopedic surgery, including plaintiff's witness and treating physician in this case, as a comparatively simple operation.
There is nothing in the record which justifies the conclusion that Mrs. Jenkins has refused to undergo the suggested operative procedure, but the fact remains that, over a period of some sixteen months following the accident, up to the time of trial she had not seen fit to avail herself of surgical attention.
It is not the province of this court to advise or suggest that a party litigant submit to any sort of surgical operation, and, certainly, it is far beyond any consideration that a court should order a litigant to submit to an operation. However, we do not deem it either just or equitable to compel the payment of substantial damages by a party defendant upon the basis of a continued disability which could, within reasonable expectation, be relieved.
The jurisprudence of this State is not barren of instances in which this same problem has been faced and resolved. This court has twice considered the cases of litigants who have suffered knee injuries identical to the one here under consideration; Fredieu v. Mansfield Hardwood Lumber Co., La.App., 53 So.2d 170; French v. Employers Mutual Liability Ins. Co. of Wisconsin, La.App., 70 So.2d 179. In the cited cases we found that the recommended surgical intervention did not involve serious risks nor undue suffering; that it was a relatively simple operation which was not attended by unusual risks and which offered a reasonable certainty of restoration of use of the injured limb. It is true that these cases involved claims under the Workmen's Compensation Statute, LSA-R.S. 23:1021 et seq., but we can perceive no valid distinction which should or could be made on this ground between the cited cases and the case at bar. Long before the pronouncements of this court were made the Supreme Court had reached much the same conclusion in its consideration of a suit for damages, *841 predicating its reasoning upon the duty of an injured party to minimize the damages suffered; Donovan v. New Orleans Railway & Light Co., 132 La. 239, 61 So. 216, 48 L.R.A.,N.S., 109.
We have dwelled at some length upon the injury to the knee suffered by plaintiff by reason of our conclusion that this constituted by far the most serious of plaintiff's injuries. We do not feel that the brief period of unconsciousness which may have been suffered by plaintiff immediately following the occurrence of the accident, nor the asserted whiplash injury, constituted any serious injury which should be compensated by a substantial amount of damages.
The injury to plaintiff's lower back did result in an exaggeration of pre-existing physical defects, and, undoubtedly, caused considerable pain and inconvenience over a period of many months. However, according to the testimony of plaintiff's physician this condition had improved and it was thought it could be brought under control by continued treatment.
Numerous authorities have been cited by learned counsel for plaintiffs and defendant relating to the amounts of monetary awards for injuries of a similar nature to those sustained by this plaintiff. It goes without saying that the authorities cited by respective counsel are those which best support their opposed contentions. It is for this reason that the author of this opinion feels that citation of authorities bearing solely upon the quantum of awards has comparatively little value, inasmuch as, like opinions of expert witnesses, they can be cumulated in support of either of two opposed contentions. As has been many times observed by our courts, it is impossible to place a fixed valuation upon any particular injury, for numerous factors must be taken into consideration with relation to the damage sustained. It is a practical impossibility for courts to set forth in complete detail all of the elements and considerations, in connection with any given case, which affect and ultimately dictate a computation of monetary allowances in the nature of damages for physical injuries. For this reason, we have repeatedly declared that each case must rest upon its own merits and must address itself to the discretion of the court.
In the instant case plaintiff had suffered varying degrees of pain over the period of sixteen months which elapsed prior to trial, though the evidence does not establish that the pain was unusually severe in nature or degree; she had been forced to discontinue her gainful employment, and she had continued to suffer a substantial degree of disability. However, we do not feel that the probability of the continuance of plaintiff's pain or disability over any considerable period of time is adequately established by the record before us, and, as above reasoned, we are convinced that the greater degree of this pain and disability could be relieved.
After consideration of all the factors and elements involved in the instant case, we cannot say that the amount of $7,500 which constituted the award in favor of plaintiff, Mrs. Jenkins, was either excessive or inadequate.
Proceeding to a consideration of the judgment in favor of plaintiff husband, William E. Jenkins, it is noted that his claims are limited to reimbursement for medical expenses incurred and to be incurred in connection with the treatment of his wife, and recovery of damages representing the loss of earnings of his wife attributable to the injuries suffered in the accident. Examination of the record discloses exhibits representing medical expenditures in the total sum of $413.98, which we believe the plaintiff husband is entitled to recover. In addition, recovery should be allowed to the extent of $300 representing the maximum cost of the menisectomy, and hospitalization in connection therewith, as estimated in the testimony of Dr. Simonton.
With respect to the allowance for loss of earnings, we think the evidence adequately *842 justifies the conclusion that Mrs. Jenkins was not able to work at the time of trial and had then been unemployed, by reason of her injuries, for a period of fourteen months. The prognosis as to the time of complete recovery, assuming that the knee operation should be performed, is somewhat indefinite.
Mrs. Jenkins was earning $25 per week at the time of the accident and continued to earn this salary until forced to discontinue working. We find nothing in the record which would indicate that Mrs. Jenkins, after undergoing an operation, should be incapacitated for a period in excess of one hundred weeks from the time she ceased work. Dr. Simonton's testimony does not indicate that Mrs. Jenkins would be permanently disabled from performing the duties of her accustomed employment. Accordingly, on this item we think an allowance of $2,500 would be adequate under the established facts.
Counsel for plaintiffs vigorously complains of the action of the district judge in ordering the entry of a remittitur under penalty of granting a new trial. We think this question is somewhat academic in view of the constitutional provision that all appeals shall be both upon the law and the facts; Constitution of 1921, Article VII, Section 29, LSA. Because of this provision this court has the authority to increase or decrease the amounts of any judgments appealed from, regardless of the action of either the judge or jury on original trial.
However, in this connection, we observe from the record that judgment was actually read, signed and filed in accordance with the verdict of the jury on October 15, 1958, and the court ordered the remittitur on October 20, 1958, which order was acquiesced in, under protest, and the amended judgment was read, signed and filed on October 29, 1958. This action would seem to be in violation of the provisions of Code of Practice Articles 547 and 548.
For the reasons assigned the judgment appealed from is amended by reducing the amount awarded in favor of plaintiff, William E. Jenkins, and against the defendant, American Automobile Insurance Company, to the sum of $3,219.98, and as amended, the judgment is affirmed. Costs of this appeal are taxed against plaintiffs-appellants.