131 So.2d 70 (1961)
Mrs. Thelma McLeod BOWERS, et al., Plaintiffs-Appellants,
v.
LUMBERMENS MUTUAL CASUALTY COMPANY, et al., Defendants-Appellees.
No. 9516.
Court of Appeal of Louisiana, Second Circuit.
June 1, 1961.
Rehearing Denied June 22, 1961.
*71 Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, for appellant.
Bodenheimer, Looney & Richie, Shreveport, for appellee.
Before HARDY, AYRES and BOLIN, JJ.
HARDY, Judge.
This is an action by plaintiffs, husband and wife, for damages resulting from personal injuries sustained by the wife as the result of an accidental fall while shopping in a business establishment known as Hi-Lo Supermarket in the City of Shreveport. Named as defendants are Community Drug Store, Inc., owner and operator of the Hi-Lo Supermarket, and its liability insurer, Lumbermens Mutual Casualty Company. From a judgment in favor of defendants rejecting their demands plaintiffs prosecute this appeal.
The facts established on trial disclose that the accident occurred in the Hi-Lo grocery store shortly after its opening for business on the morning of Saturday, October 24, 1959. Plaintiff wife, Mrs. Thelma McLeod Bowers, a regular patron of the market, was shopping for groceries, and while pushing a market cart, loaded with numerous items of groceries which she had selected, in the vicinity of the dairy products display box, she slipped and fell, allegedly sustaining the physical injuries for which she seeks compensation in damages. It was established that a very short time, estimated at a period of minutes, prior to the accident a deliveryman for the wholesale milk distributors selling products to Hi-Lo market, had spilled a quantity of milk on the floor of the aisle in front of the dairy products storage and display box. A colored porter employed by Hi-Lo, called as a witness on behalf of plaintiffs, testified that he was almost immediately informed of the occurrence, whereupon he mopped the milk from the floor, using a dry mop for such purpose; that after he finished his mopping operation he tested the floor area involved and found it was not slippery. However, it is worthy of note that this same witness testified that following the accident he had made another inspection of the same area and found it to be slightly damp. There is no doubt as to the fact that Mrs. Bowers, intent upon her shopping, stepped and slipped upon the floor at the exact spot where the milk had been spilled and the mopping operation *72 had been performed. Mrs. Bowers testified that her hose were torn as the result of the fall and that her coat was damp from contact with the floor. Other pertinent testimony was given by the checkout cashier, who was informed by Mrs. Bowers of the accident and immediately called the manager. This official gave Mrs. Bowers a new pair of hose to replace the pair that had been ruined by her fall, solicitously inquired as to whether she had sustained any injuries, made a notation of his customer's name and address, and, thereafter, made an inspection of the floor where the fall had occurred, finding no visible evidence, at that time, of any existing dangerous condition.
There can be no question in this case as to the fact which was definitely stated in the written opinion of the trial judge that Mrs. Bowers "* * * stepped on a damp spot in the floor which caused her fall." However, the district judge concluded that Mrs. Bowers "* * * owed a duty to refrain from stepping on the damp spot if she could see it, as she did."
Upon the basis of the holding of this court in Peters v. Great Atlantic & Pacific Tea Company, La.App., 72 So.2d 562, the district judge rejected plaintiffs' demands. The inference is clear that this action was predicated upon the conclusion that Mrs. Bowers had been guilty of contributory negligence and that, as stated in the cited case, a storekeeper is not the insurer of his customers.
Careful examination of the record in this case has convinced us that milk was spilled on the floor in a location which constituted a danger to the customers engaged in shopping; that an attempt was made to rectify the danger by mopping the greasy liquid, but that after this operation was concluded a damp spot remained which, until it completely dried, unquestionably continued to constitute a hazard. Nor do we think there can be any question as to the correctness of the conclusion which we have reached that the plaintiff, Mrs. Bowers, slipped and fell as the result of stepping upon this exact spot of the floor. We do not agree with the finding of the learned trial judge that Mrs. Bowers could and did observe the damp spot before stepping upon it. Even conceding the point vigorously urged by counsel for defendants, without, however, accepting the fact as having been preponderantly established, that Mrs. Bowers had passed by the area in question where the porter was engaged in his mopping operations, we do not think this fact in itself would be sufficient to establish contributory negligence. In this connection we note that Mrs. Bowers' testimony denies that she had passed by this area at the time it was being mopped. In any event, according to her uncontroverted testimony, when she reached the spot where the fall occurred, en route to the dairy goods compartment, she was pushing ahead of her the usual type of market shopping cart, loaded with a number of items of groceries which she had placed therein, and we do not feel she was under any obligation to make specific observation of the condition of the floor before taking each step in the course of her shopping activities, nor do we find any authority in our jurisprudence which would indicate the application of such an obligation.
It is pertinent to call attention to the fact that the plea of contributory negligence is an affirmative defense and the burden for the establishment thereof by proof amounting to a legal certainty is well supported by our jurisprudence. Kern v. Bumpas, La.App., 102 So.2d 263, and the numerous authorities cited therein. We find no basis in the instant case which would justify a holding that contributory negligence has been adequately established.
Accordingly, we have experienced no difficulty in concluding that a dangerous condition existed which was directly attributable to and constituted negligence on the part of the operators and employees of the Hi-Lo Market; that plaintiff wife was unaware of the existence of the danger and was not guilty of contributory negligence *73 with respect to the occurrence of the accident.
Under the above delineated factual findings we think the asserted authority of Peters v. Great Atlantic & Pacific Tea Company, cited supra, is inappropriate. Reference to the cited case clearly discloses the fact that our conclusions were based upon the finding that the plaintiff therein had "* * * entirely failed to prove that the bean remained on the floor for such a period of time that it became the duty of the defendant to notice and remove it from the floor."
We have no reservations as to the correctness of the principles of law enunciated in the Peters case, but the facts involved serve to entirely remove it from consideration as appropriate authority in the instant case. The obligations and duties of a store owner to his customers are adequately set forth in our jurisprudence, namely, that he must exercise a reasonable degree of care in keeping the aisles and passageways of his store clear and safe and protect his customers from danger spots by appropriate preventive action. Morel v. Franklin Stores Corp., La.App., 91 So.2d 42; Ellington v. Walgreen Louisiana Company, Inc., La.App., 38 So.2d 177. An examination of the cases considered by our appellate courts discloses that there is little contention as to the law applicable to those cases generally designated as coming within the "slip-fall" category. Almost without exception the determination by our appellate tribunals has been based upon an examination of the facts involved.
We proceed to a consideration of the quantum of damages which should be fixed in the instant case. Mrs. Bowers' injuries consisted of a sprained right shoulder, a hematoma of the right shin and a torn cartilage of the right knee. The first two injuries, though temporarily painful, produced no real residual disabilities, and in our opinion must be considered to have been of a somewhat minor nature. The most serious injury consisted of the torn cartilage of the right knee which, according to the testimony of plaintiff's medical witnesses requires operative procedure for correction.
Trial of this case was had on October 6, 1960, approximately one year following the date of the accident. Unquestionably, Mrs. Bowers had suffered from instability of the knee and resulting handicaps in the performance of her duties and in her ordinary physical activities during this period. However, according to her own testimony, Mrs. Bowers had refused to submit to operative procedure for the correction of the injury, although she realized it would some day be necessary. Her only reason for postponing the operation was a fear that the knee might be "* * * stiff or something * * *." Additionally, this plaintiff testified that she was postponing the operation until it had to be performed as a last resort, although "* * * I suppose it wouldn't be any worse than what it is."
It is urgently argued by counsel for plaintiffs that the operative procedure is fraught with danger, which argument is based upon the testimony of a capable and experienced orthopedic surgeon that the operation was classified as a major surgical procedure performed under general anaesthetic; that approximately 2% of such operations were failures; that even a successful operation would leave the patient with a 10% partial permanent disability, and that one out of 15,000 people die as the result of risks inherent in undergoing a general anaesthetic.
Accepting the complete validity of the above conclusions of the eminent witness, we nonetheless are disinclined to lend the authority of the judicial process to the fixing of excessive damages simply because an injured party voluntarily chooses to accept a long continued period of pain and disability rather than submit to operative procedure, which in the vast majority of cases is not only successful but unattended by serious risk.
According to the testimony of plaintiffs' medical witnesses the operation would require *74 hospitalization for a period of several days and the estimated time of convalescence was fixed at some two or three months.
Mrs. Bowers was under treatment by her physician for a period of some seven months, more or less, following the accident, and it was about three months later that she consulted the expert whose testimony we have outlined above. We think that by this time the necessity for an operation should have been obvious and that if such operation had been performed, maximum recovery would have been evident as of the time of trial, subject to the small percentage of residual partial disability.
After attempting to evaluate the nature and extent of this plaintiff's injuries, we have reached the conclusion that an award of $3,500 would represent adequate compensation.
Finally, we are confronted with the necessity for determination of the damages sustained by the plaintiff husband. There appears to be no question as to the medical expenses paid, to the extent of $202 nor as to the reasonable approximation of future medical expenses in connection with the requisite operative procedure in the amount of $400 and it follows that recovery of this total amount of $602 should be allowed in favor of the said plaintiff.
However, by an amended petition plaintiffs prayed for an additional judgment in the amount of $500, representing the maximum liability for medical payments under the policy of insurance involved. By answer to the amended petition defendants admit the provision of the policy with respect to liability for medical payments within the limit of $500, regardless of fault, and further affirmatively conceded their willingness to make payment of such medical expenses incurred within a period of one year from the date of the accident under the specific policy provision with reference thereto.
In view of these admissions it follows that there is involved only the question of the right to recovery under the medical payment provision of the policy, of the amount of $202 representing medical expenses incurred within one year from the date of the accident.
This point tenders a legal question involving the right of an injured party to a so-called "double recovery" of medical expenses.
Reference to the policy involved in the instant case discloses the following provision specifically applicable to "Medical Coverage C" of the policy with respect to liability for medical payments:
"Action Against Company. Coverage C.
"No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor until thirty days after the required proofs of claim have been filed with the company."
The record does not disclose that any demand was ever made upon either the insured or its insurer for payment of the medical benefits provided by the policy until after institution of the suit some nine months following the accident. We further feel justified in concluding that this demand, as made by the supplemental and amended petition, was purely an afterthought. In any event, it is clear that it was not properly asserted under the policy provisions. This conclusion obviates the necessity for consideration of plaintiff's right to assert and effect recovery of medical expenses under a separate coverage of the insurance policy.
For the reasons assigned the judgment appealed from is annulled, set aside and reversed, and
It is ordered, adjudged and decreed that there be judgment in favor of plaintiff, Mrs. Thelma McLeod Bowers, and against the defendants, Lumbermens Mutual Casualty Company and Community Drug Store, *75 Inc., in solido, in the full sum of $3,500, with interest thereon at the legal rate from date of judicial demand until paid.
It is further ordered, adjudged and decreed that there be judgment in favor of plaintiff, Art C. Bowers, and against the defendants, as above named, in solido, in the full sum of $602 with interest thereon at the legal rate from date of judicial demand until paid.
All costs of both courts are taxed against defendants-appellees.