Lionel **MARCANTEL**

v.

**SOUTHWESTERN PIPE, INC.**

Lionel **MARCANTEL**

v.

**JOE D. HUGHES, INC.**
**Civ. A. Nos. 10178, 10270.**

United States District Court
W. D. Louisiana,
Opelousas Division.

Nov. 12, 1965.

200

Sternfels, Garzotto & Slavich, John A. Slavich, New Orleans, La., for plaintiff.

Felecian P. Lozes, New Orleans, La., for intervenor.

Kennon, White & Odom, John S. White, Jr., Baton Rouge, La., for defendant.

## MEMORANDUM OPINION

PUTNAM, District Judge.

These suits were consolidated for trial, with verdict being returned on special interrogatories submitted pursuant to F.R.Civ.P. 49(a), 28 U.S.C.A. in favor of plaintiff against the defendant Joe D. Hughes, Inc., for $42,000.00. Southwestern Pipe, Inc., defendant in suit No. 10,178, was relieved of liability by a finding of lack of negligence. Hughes' motions for judgment n. o. v. and alternatively for a new trial are now before us for decision.

Plaintiff was employed by South Louisiana Contractors, Incorporated, and, on June 14, 1963, was injured while stringing pipe from a moving truck along a pipe line right of way near Mamou, in Evangeline Parish, Louisiana. According to plaintiff's testimony, he was mounted on the bed of the truck, between the end of the pipes and the cab, and a co-worker, Tolan Fontenot, followed afoot. While the truck proceeded at a slow speed, plaintiff and Fontenot would roll the pipe, one length at a time, off the truck and along the right of way in such fashion that the joints were end to end, ready to be butted and connected by other employees of South Louisiana Contractors engaged in building the pipe line.

Marcantel further stated that at the time of his injury they were working on the third and last truckload of pipe to be delivered that day; that the truck idled too fast for them to roll the pipe properly, and that they requested the

driver to slow down but he advised them he was unable to do so. While crossing a small ditch or gully, which the witness referred to as a creek, the truck almost stalled. When the driver accelerated without warning, it jerked suddenly, causing Marcantel to fall. He said that he landed on his feet, twisting as he did so, and injured his back. Fontenot corroborated Marcantel as to the facts of the accident, and both stated that the driver stopped the truck, gave them a drink of water and after a few minutes' rest they proceeded to finish out the day. Marcantel reported for work the next day, which was a Saturday, but was unable to lift anything because of back pain. He was assigned to the operation of a winch truck.

On Sunday, he consulted Dr. Manuel in Mamou about his back, and this physician gave him pills for the pain he was experiencing. Monday, he reported to work but couldn't do any type of labor. He was sent to town, where he saw Dr. Frank Savoy.

Defendant Hughes offered the testimony of Buster Smith, by deposition, who Marcantel saw in Houston and identified as the driver of the truck on which he was injured. Smith states positively that he was in Mamou on the day of the accident, that he owned the truck he was driving which he leased to Joe D. Hughes, Inc. and that he was loaded out for the Mamou trip as Hughes' employee. He said that he could not remember any accident, that he did not recognize Marcantel and that he had done this type of hauling on numerous occasions. He identified his truck in photographs shown to him as the truck he was driving when he made this trip. After leaving Houston, he lost the oil plug and oil from the truck and had to telephone back to the service station where he had had the truck serviced, for oil and a new plug.

The conflict in the testimony of Marcantel and Fontenot as opposed to that of Smith centered about three points; first, plaintiff's testimony as to the accident, second, the truck from which plaintiff allegedly fell, and third, whether or not Smith permitted anyone to mount the trailer of his truck on the day in question to help roll the pipe off. There are other conflicts, Smith's testimony being that there were five men, two walking behind the truck, two walking on the side by the cab, and the fifth being ahead opening gaps in fences, etc. Marcantel and Fontenot, on the other hand, maintain that they were the only two men rolling the pipe from the truck, and present when the mishap occurred.

Smith says there was no accident that he can remember, and he could not remember Marcantel in particular, although he readily admits plaintiff could have been one of the men there. He said he never carried a water cooler in his truck, that the pipe was forty feet long on a thirty-five foot trailer and was too close to the cab to permit a man to work where Marcantel says he was working; that he could and would have seen any man working on the trailer behind the cab (he did admit that several times when he stopped the truck one man got up on the trailer to roll off a joint of pipe), and no one did. Marcantel, on the other hand, identified Smith as the driver of the truck on which he was injured, but steadfastly contended that Smith's truck was not the truck in question. Fontenot never saw Smith from the time of the accident to date of trial; and on this point Marcantel's testimony stands alone.

Both Marcantel and Fontenot said that the door of the truck had some writing on it, and that the words "Red Bell" were painted on the door. Smith's truck has no such marking, as can readily be seen from the photographs which went to the jury. Marcantel did say that he remembered the name Joe D. Hughes on the door, and at one point in his testimony referred to the driver as "Mr. Hughes"; again he referred to the driver as that "old man". Smith was 49 years of age when his deposition was taken in September of 1964. It was the testimony of both Marcantel and Fontenot that the truck was similar to one in the left hand corner of exhibit P-8, rather than the

Smith truck shown as the principal subject of this photograph.

■ Obviously, it was the province of the jury to weigh all of the testimony and decide the question of whether or not Smith was the driver of the truck at the time plaintiff was injured, whether or not he was negligent and an employee of Joe D. Hughes, Inc. and whether or not such negligence was a proximate cause of plaintiff's injury. This they did, in plaintiff's favor.

Defendant argues that there was no evidence before the jury to establish a connexity between Joe D. Hughes, Inc., and plaintiff's injuries. This view is clearly erroneous. Smith's testimony that he was an employee of defendant Hughes and that he was dispatched on this particular job by his superior, Harry Strange, also an employee of Hughes, is most positive. Plaintiff saw the drivers of the first two trucks, Mayhall and Zwahr, and testified to the jury that neither was the driver of the truck involved. These men drove for the defendant Southwestern Pipe, Inc.

The case does not turn upon whether or not the witnesses could identify the *truck*, it was whether the driver whose negligence brought about the injury was an employee of Joe D. Hughes, Inc., and, in finding as they did here, it is quite apparent that in their evaluation of the evidence the jury accepted plaintiff's view in preference to the testimony of Smith.

In the light of all of the circumstances in the case, the Court cannot say that there was no evidence from which such conclusions could be drawn; consequently, the motion for judgment n. o. v. should be and it is, denied. These questions of fact were in dispute and the motion for directed verdict was denied for that precise reason. F.R.C.P. 50(b), 28 U.S.C.A. See Barron and Holtzoff, Federal Practice & Procedure, Vol. 2B, § 1079, p. 410.

■ We now consider the alternative motion for a new trial. It is recognized that the test here is one that addresses itself directly to the Court under F.R.C.P. 50 and 59, Title 28 U.S.C.A. requiring a consideration of all factors in the case weighing upon a determination of whether or not the elusive "interests of justice" demand that the matter be submitted to another jury.

While it is quite possible, even probable, that had the case been tried without the intervention of a jury, the Court would have found for the defendant, but when we consider the lack of education of plaintiff and Fontenot, the fact that they had worked on other trucks in stringing pipe together and in the oil fields over several months, the Court cannot say that the doubt brought about by their insistence that the Smith truck was not the truck driven by him that day is such as to induce a belief that Marcantel's positive identification of Smith lacks credibility.

As Smith himself said, the photographs of his truck show it to be in the same condition as it was at the time of his trip to Mamou, except that the holes appearing on the trailer deck were not there. More important, he does not completely deny that someone may have been hurt, only that he does not remember any accident and that none was reported to him. Marcantel, on the other hand, gave as one of his reasons for stating that he did not think the photograph depicted the truck from which he fell, the fact that there were no holes in the bed of the truck by which he was injured.

It is not disputed that Smith was there on the day in question, that his truck was the last one unloaded, and that it had no holes in the bed at the time. In view of all of the testimony, the Court ascribes the testimony regarding "red bell" insignia by plaintiff and Marcantel to confusion and a failure of accurate recollection. Moreover, Marcantel and Fontenot both recalled that the driver had mentioned the fact that he had lost the oil in his truck as a reason for being late.

■■ Movant further contends that the Court's charge did not adequately

cover the elements to be considered by the jury in assessing damages. No objection was made to the charge at time of submission of the case. The Court has reviewed the oral instructions given in addition to the written instructions incorporated in the form of verdict, and find that the jury was charged on the law of Louisiana which requires an injured party to minimize or mitigate damages by availing himself of medical treatment. Donovan v. New Orleans Ry., etc., 132 La. 239, 61 So. 216, 48 L.R.A.,N.S., 109 (1913); Jenkins v. American Automobile Insurance Co., 111 So.2d 837 (La.App.1959); Bowers v. Lumbermen's Mutual Cas. Co., 131 So.2d 70 (La.App. 1961); Dark v. Brinkman, 136 So.2d 463 (La.App.1962); Andrus v. Security Ins. Co. of New Haven, 161 So.2d 113 (La. App.1964), writs denied; 246 La. 81, 163 So.2d 358 (1964); Davis v. St. Louis Southwestern Ry. Co., 106 F.Supp. 547, aff'd, 204 F.2d 251 (5 Cir. 1953). The burden of proof that plaintiff's failure to avail himself of medical treatment was unreasonable rests upon the tort feasor, in this case Hughes. Roy v. Robin, 173 So.2d 222 (La.App.1965).

The medical evidence leaves no doubt that plaintiff has suffered an injury to his back, and that he is disabled from performing his customary occupation as a laborer. We cannot say with absolute certainty that his condition is permanent, or that the evidence shows a positive diagnosis of ruptured intervertebral disc. In the opinion of the two physicians who testified, however, such is his condition, although he refused to submit to a myogram which would have made a conclusive diagnosis possible. The preponderance of the evidence is with plaintiff, on the basis of this record. Nor do we find that defendant has carried the burden of proving that plaintiff unreasonably refused to submit to surgery or treatment, which might prompt us to enter a remittitur. The award of $42,000.00 is not, in our opinion, excessive.

The application for a new trial is also denied.