Leonard D. BOSWELL, Appellant,

v.

TERRACE NAVIGATION CORPORA-
TION et al., Appellees.

No. 24398.

United States Court of Appeals
Fifth Circuit.

Oct. 20, 1967.

John L. Fulbright, Beaumont, Tex.,
John T. Lindsey, Port Arthur, Tex., for
appellant.

Charles D. Kennedy, Royston, Rayzor
& Cook, Houston, Tex., for Terrace Navi-
gation Corp.

Dixie Smith, S. G. Kolius, Fulbright,
Crooker, Freeman, Bates & Jaworski,
Houston, Tex., for Port Arthur Steve-
dores.

Before WISDOM and GOLDBERG,
Circuit Judges, and NOEL, District
Judge.

GOLDBERG, Circuit Judge:

On December 14, 1962, the S. S. Thun-
derbird was berthed in Port Arthur,
Texas, to receive a cargo of bulk grain.
In order to load the grain evenly through-
out the cargo space of the No. 4 hatch,
it became necessary to cut several trim-
ming hatches in the second or "tween"
deck of the vessel. These trimming
hatches, 24″ x 24″ holes in the deck, were
cut during the day by longshoremen oth-
er than Boswell and were covered by
heavy "hatch boards."

Boswell was a winch operator and went
to work aboard the vessel at about 7:30
a. m. or 8:00 a. m. He worked as a
winch operator part of the day and
worked the rest of the day in the hold

of the No. 4 hatch in the tween deck section assisting in the construction of grain shifting boards. He took a break for supper at 6:00 p. m. and returned at 7:00 p. m. with Mr. Miller, another winch operator. The two men went to work in the offshore side of the No. 4 hatch at the tween deck level to clean up the scrap lumber and sawdust that had accumulated during the day. At about 7:20 p. m. Boswell fell through one of the trimming hatches or holes in the tween deck, sustaining injuries which were later determined to be permanent or disabling. In a suit filed against Terrace Navigation, Boswell made claims of negligence and unseaworthiness. The owner of the vessel then impleaded Port Arthur Stevedores, Boswell's employer, in a claim for indemnity. The court found Boswell's damages to be $47,178.86, but the court reduced the recovery by 50% because it found Boswell to have been contributorily negligent. Port Arthur Stevedores carried compensation insurance with Texas Employers Insurance Association who intervened in the suit to establish its right to be reimbursed out of Boswell's recovery for the sums expended for compensation and medical services, totaling $14,648.08. The District Court held that Boswell's recovery should be reduced by this amount which was awarded to the intervenor.

Boswell first contends that the District Court failed to enter adequate fact findings as to his contributory negligence. In Boutte v. M/V Malay Maru, 5 Cir. 1967, 370 F.2d 906, 907–908, Judge Brown said:

> The only real difficulty we have in the case is the sparseness or inadequacy of the Trial Court's findings of fact long required in Admiralty, Rule 46½ now carried forward under the new dispensation, F.R.Civ.P. 52(a). Our task would have been greatly simplified by more detailed, if not more formal, findings on basic liability and causation. But after close analysis of the record we are convinced that the oral findings stated into the record at the con-

clusion of Libelant's case and the arguments of counsel will suffice. If adequate to reveal essential findings, the form is not too important.

Our reading of the record here elucidates the findings, which though terse and parsimonious, are not niggardly as to render them nugatory in justifying the District Court's explicit conclusion of contributory negligence. We are not asked to be clairvoyant, and this case bears no resemblance to Victory Towing Co. v. Bordelon, 5 Cir. 1955, 219 F.2d 540, where no findings were made. See Myles v. Quinn Menhaden Fisheries, Inc., 5 Cir. 1962, 302 F.2d 146. See also Weber v. McKee, 5 Cir. 1954, 215 F.2d 447, 451–452, and Ginsberg v. Royal Ins. Co., 5 Cir. 1950, 179 F.2d 152.

Boswell next contends that the finding of contributory negligence was clearly erroneous. There is considerable evidence, however, to support the finding that Boswell knew or should have known that an uncovered trimming hatch might be in his path. He admitted to having known that holes were being cut in the tween deck during the day of his fall. Miller testified that both he and Boswell observed the trimming hatches being burrowed in the tween deck and that Boswell was present when Miller warned two new men about the holes. Boswell admitted that lighting was adequate in the evening when he began work, and he stated several times that he did not watch where he was walking just prior to the accident. Duplantis, one of two longshoremen who were working for the first time that day, testified that Miller told him about the trimming hatches and warned him to be careful and that Boswell repeated the warning. Thus, there was testimony justifying the District Court's finding of contributory negligence in that Boswell (1) knew the holes were being cut, (2) was not watching just prior to the accident, (3) was warned of the holes and the necessity for his being careful, and (4) warned others to be careful in working around the trimming hatches. See Manning v. M/V Sea Road, 5 Cir. 1965, 358 F.2d 615;

Nicroli v. Den Norske Afrika-Og Australielinie, 2 Cir. 1964, 332 F.2d 651, 654; Shenker v. United States, 2 Cir. 1963, 322 F.2d 622, 624–625; Palardy v. United States, E.D.Pa.1952, 102 F.Supp. 534.

We are not empowered to essay a de novo evaluation of the evidence. We have read the record to ferret for a clearly erroneous conclusion, but our foraging has been in vain. A reading of the record does not leave us "with a definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746, 766, quoted in the following admiralty cases: McAllister v. United States, 1954, 348 U. S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20, 24; Guzman v. Pichirilo, 1962, 369 U.S. 698, 702, 82 S.Ct. 1095, 1098, 8 L.Ed.2d 205, 209; and Haynes v. Rederi A/S Aladdin, 5 Cir. 1966, 362 F.2d 345, 349. We are not clearly convinced that the judgment and finding of the court below was erroneous.

Boswell's argumentative might-have-beens here collide with the realisms of evidence. He asserts that all warnings allegedly received by him concerned *covered* hatch holes, and that no hole was seen uncovered before his accident. He neglects to say why such warnings might be given, other than the obvious reason that the covers could have been an on-and-off affair.

Boswell importunes a holding by us that knowledge of the uncovered condition at the penultimate moment of the injury is the *sine qua non* of his negligence. He seeks exculpation from negligence for lack of concomitant proof that prior knowledge and warning were replaced by later intelligence. Boswell would have us say that there can be no hiatus in the proof, that the judge could not conclude that he knew of the danger a minute before the injury simply because he knew of it an hour before. Without taking a metaphysical stand on the immortality of thought, we allow permanency of at least a few hours for a warning of danger.

 Boswell bemoans the District Court's order that the intervenor be paid 100% of its disbursements out of his recovery while the recovery awarded to him was only 50% of his actual damages. Sympathetic as we might be to his plaint, the District Court's ruling accords with Haynes v. Rederi A/S Aladdin, 5 Cir. 1966, 362 F.2d 345, 350.

The judgment of the court below is affirmed.