Charles **STARK**, Plaintiff-Appellant-Cross Appellee,

v.

**SHELL OIL COMPANY,** Defendant-Appellee,

v.

**HIGHLANDS INSURANCE COMPANY,** Intervenor-Appellee-Cross Appellant.

No. 71–1151.

United States Court of Appeals, Fifth Circuit.

Oct. 13, 1971.

Rehearing Denied and Rehearing En Banc Denied Nov. 19, 1971.

L. G. Fant, Jr., Holly Springs, Miss., John P. Fox, Houston, Miss., for Charles Stark.

George Woodliff, Jackson, Miss., for intervenor.

Hassell H. Whitworth, Elizabeth W. Grayson, Jackson, Miss., for Shell Oil Co.

Before COLEMAN, SIMPSON and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Charles Stark brought this diversity action against Shell Oil Company claiming that he had sustained personal injuries as a result of Shell's negligence. Highlands Insurance Company intervened to recover the benefits it had paid to Stark under the Longshoremen's and Harbor Workers' Compensation Act. 33 U.S.C. § 933.

After trial without a jury, final judgment was entered awarding Stark the sum of $27,772.99, of which $16,825.00 went to Stark and $10,947.99 went to Highlands Insurance Company. It was also ordered that Highlands was entitled to offset future compensation benefits against the net amount recovered by Stark from Shell. "Net amount" was defined as the sum awarded to Stark less his costs and attorneys' fees.

The trial court's judgment has resulted in a dual appeal. Appellant Stark claims that the damages awarded him were inadequate, and that the inadequacy resulted from the trial court's having made errors in applying the law and finding the facts. Cross-appellant Highlands Insurance Company contends that the district court should not have deducted Stark's costs and attorneys' fees from his recovery in determining the amount of its credit against future compensation benefits. Shell Oil Company does not appeal.

We have determined that the judgment awarded to Charles Stark must be reversed and the cause remanded for further proceedings. On the appeal of Highlands Insurance Company the judgment of the district court is affirmed.

## I.

Stark, an employee of the Otis Engineering Corporation, worked as a wire line specialist on one of Shell's offshore oil platforms in the Gulf of Mexico, off the Louisiana coast. His injury occurred on August 28, 1967, when he was struck in the back by a load of pipe which was slung from a crane being operated by

Shell. The crucial part of this case, however, is not Stark's accident, but his subsequent medical history, which we set out in some detail.

Three days after the accident Stark went to Dr. Vincent Tumminnello, a physician and surgeon in Harvey, Louisiana. Dr. Tumminnello found no abnormalities which would account for Stark's complaints of back pains. He referred Stark to Dr. Russell Grunsten, a New Orleans orthopedic surgeon. Dr. Grunsten examined Stark and also examined the X-rays taken by Dr. Tumminnello. The doctor found no indication of any injury, and was of the opinion that Stark could return to work. Stark, however, was unable to work because of severe back pains.

In September and October of 1967, Stark consulted Dr. Roy Harmon, of Houston, Mississippi. Dr. Harmon twice performed myelograms on Stark. Dr. Harmon suspected that Stark had a herniated disc at L–5, but was not positive about this diagnosis. Dr. Harmon referred Stark to Dr. Albert Azordegan, a neurosurgeon of Jackson, Mississippi, who made monthly visits to Houston.

Stark first saw Dr. Azordegan in November, 1967. The doctor prescribed medication for Stark and also recommended that he undergo exploratory surgery. Dr. Azordegan continued to treat Stark throughout 1968 and early 1969. In March, 1969, Stark agreed to undergo the recommended surgery and checked into the hospital. When he found that his wife would not be allowed to stay with him as promised, he refused to go through with the operation and checked out of the hospital.

In the interim, in November 1968, Stark had seen Dr. Richard DeSaussure, a neurosurgeon from Memphis, Tennessee. Dr. DeSaussure had also recommended exploratory surgery. In March of 1969, less than a week after refusing the operation which was to have been performed by Dr. Azordegan, Stark returned to Dr. DeSaussure. The doctor again recommended surgery, and this time Stark allowed the operation to be performed. Dr. DeSaussure performed what he described as a "partial hemilaminectomy," examining the disc spaces between L–4 and L–5. He found no abnormality.

Stark continued to suffer back pain. In July, 1969, he went to Dr. Elmer Nix, an orthopedic surgeon in Jackson, Mississippi. Dr. Nix examined Stark for the possibility of an arthritic condition but found none. He was unable to discover the source of Stark's pain.

Stark next saw an internal medicine specialist, Dr. Robert Stroud, of the Alabama Medical Center in Birmingham. Dr. Stroud examined Stark and made laboratory tests, but found no evidence of an abnormality which would explain Stark's back pain. At the Medical Center, Stark also saw Dr. Griffith Harsh, a neurosurgeon. Dr. Harsh felt that a myelogram was necessary before making an evaluation of Stark's complaint, but Stark, who had undergone this painful procedure twice before under Dr. Harmon, declined.

Meanwhile, Stark had filed suit against the Shell Oil Company. In September, 1969, Shell moved to require Stark to submit to a physical examination under Rule 35, F.R.Civ.P. The court granted this motion and appointed Dr. George Purvis of Jackson, Mississippi, to perform the examination. The testimony of Dr. Purvis lies at the heart of this appeal.

Dr. Purvis testified that he felt Stark probably had something producing compression on the nerve root at the fourth lumbar interspace. The doctor recommended that Stark undergo exploratory surgery at the L–4 and L–5 interspaces. If this exploratory surgery revealed a protruding disc, then a portion of the protrusion would be removed. Dr. Purvis testified that if such a procedure were followed successfully, Stark could expect to suffer a 10% permanent partial disability. If the exploratory surgery revealed no disc abnormality, Dr. Purvis stated that he would explore the possibility of performing a fusion operation on the joints. This would result, if suc-

cessful, in a 20% permanent partial disability.

The final doctor to be consulted by Stark was Dr. E. F. White, of Houston, Mississippi. Dr. White testified as a witness for Stark. He stated that in his opinion Stark's pain was caused by nerve root compression resulting from scar tissue which had formed in and about the spinal canal after the accident. Dr. White testified that such a condition could not be remedied by surgery, that Stark was his patient, and that he had advised Stark not to submit to any further surgery of the back.

In making its findings of fact, the district court made the following statement:

"It appears from the evidence that should plaintiff follow the advice and counsel of properly qualified and experienced medical practitioners specializing in injuries or diseases of the spine, plaintiff should recover within a short period of time from his injuries to the extent that any resulting disability would be negligible."

Stark moved for a new trial on the issue of damages or, in the alternative, for the entry of a new judgment pursuant to Rule 59(a). In denying this motion, the district court stated:

"[T]he court concludes that the preponderance of the evidence justifies the finding that plaintiff has not exercised that degree of care with which he is charged by law to seek medical or surgical treatment so as to effect a cure and minimize damages."

In so ruling the court necessarily had in mind the testimony of Dr. Purvis, who stated that after corrective surgery Stark would be able to return to work with a probability of only slight disability. No other doctor testified that Stark's condition was susceptible to correction by surgery. In fact, only one other doctor

(Dr. White) was willing to make even a tentative diagnosis of Stark's condition.

Dr. White, who was at the time of trial Stark's own physician, advised him not to undergo surgery because he felt that the problem could not be corrected surgically. In effect, the ruling of the district court penalized Stark for following the advice of his own doctor instead of that of the doctor appointed by the court. Yet the operation which Dr. Purvis recommended, and which the district court apparently felt Stark was obliged to have, was precisely the same operation which Dr. DeSaussure had performed with negative results a scant six months before.

Appellee Shell Oil Company has argued that Stark is merely complaining about a finding of fact, which cannot be overturned on appeal unless clearly erroneous. Rule 52(a), F.R.Civ.P. The clearly erroneous rule does not apply, however, when the findings of fact are founded on incorrect legal principles. Davis v. Parkhill-Goodloe Co., 302 F.2d 489 (5th Cir. 1962); United States v. Richberg, 398 F.2d 523 (5th Cir. 1968). Here we think that the district court applied the wrong rule of law.

This case is governed by Louisiana law. Rodrigue v. Aetna Casualty and Surety Co., 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969). The law of Louisiana is that an injured person must submit to reasonable treatment, including an operation if it is shown that the operation will alleviate the disability. Donovan v. New Orleans Railway & Light Co., 132 La. 239, 61 So. 216 (1913);[1] Welch v. Ratts, 235 So.2d 422 (La.App.1970). "An injured person may not refuse to accept treatment which the best medical advisers believe to be necessary and then claim compensation for the additional disability which, in such case, has resulted not so much from the original injury as from the refusal to submit

---

1. The medical profession has made great strides since 1913, when the *Donovan* court remarked, with reference to a hernia operation, "surgical operations are not looked upon with the horror that they inspired in former years. It requires only ordinary resignation."

to treatment." Fossier v. D. H. Holmes Co., 19 La.App. 434, 139 So. 709, 710 (1932). See also Bowers v. Lumbermens Mutual Casualty Co., 131 So.2d 70 (La. App.1961); Dark v. Brinkman, 136 So.2d 463 (La.App.1962).

The factors to be considered in applying this rule are (a) whether the operation involves serious risks or undue suffering, (b) the relative simplicity of the operation, and (c) whether or not the operation offers a reasonable certainty of correcting the problem. Jenkins v. American Automobile Ins. Co., 111 So.2d 837, 840 (La.App.1959). Thus, where the operation is one of an inherently dangerous nature, Frye v. Joe Gold Pipe and Supply Company, 50 So.2d 38 (La. App.1951), or where previous unsuccessful operations have been performed, Davis v. St. Louis Southwestern Ry. Co., 106 F.Supp. 547 (W.D.La.1952), aff'd, 204 F.2d 251 (5th Cir. 1953), the plaintiff need not submit to the surgery.

■ The tortfeasor carries the burden of proving that the injured claimant has unreasonably neglected to seek medical attention. Roy v. Robin, 173 So.2d 222 (La.App.1965); Marcantel v. Southwestern Pipe, Inc., 271 F.Supp. 199 (W.D.La. 1965), aff'd sub. nom. Joe D. Hughes Inc. v. Marcantel, 380 F.2d 12 (5th Cir. 1967); Andrus v. Great American Insurance Co., 161 So.2d 113 (La.App. 1964).

■ We think that Shell's proof fell far short of demonstrating that Stark unreasonably refused to submit to treatment of his back injury. Even without weighing the seriousness of the operation proposed by Dr. Purvis, there was no showing that that operation offered a reasonable certainty of correcting the disability. There was direct medical testimony that it did not. There was also the undisputed evidence that an identical operation had already been performed with negative results.

The issue of damages must be remanded to the district court for further consideration, applying the principles outlined above.

## II.

■ Cross-appellant Highlands Insurance Company urges error on the part of the district court in holding that Stark's attorneys' fees and costs of suit should be deducted from the amount received by him in determining the amount of credit Highlands could get against future compensation benefits. We think the district court was correct in its ruling on this issue.

This case is controlled by our decision in Voris v. Gulf-Tide Stevedores, 211 F. 2d 549 (5th Cir. 1954), in which we held that the employer and insurance carrier under the Longshoremen's & Harbor Workers' Compensation Act were to be given credit against future compensation benefits for only the net amount actually received by the compensation beneficiaries in a third party action, excluding attorneys' fees. The district court correctly allowed the carrier full recovery from the award for the total benefits it had disbursed to the date of the judgment. Haynes v. Rederi A/S Aladdin, 362 F.2d 345 (5th Cir. 1966); Boswell v. Terrace Navigation Corporation, 384 F.2d 186 (5th Cir. 1967); Strachan Shipping Co. v. Melvin, 327 F.2d 83 (5th Cir. 1964). These cases did not involve future benefits. In Judge Brown's dissent in *Melvin* he analyzed the *Voris* decision in detail:

"The Voris case stands in substance for the proposition that where the employer seeks *credit* against further and added compensation benefits then due and owing only the net recovery from the third party may be deducted. In effect the employer bears all, not just a pro rata part, of the attorney's fees. This is essential to effectuate the statutory purpose of giving the injured worker his minimum benefits." At 327 F.2d 88, 89 [emphasis in original].

Appellant has pointed to no circumstance which would indicate a reason for our

not applying the *Voris* rule in this case. We therefore affirm the ruling of the district court on the cross-appeal.

Affirmed in part; reversed and remanded in part.

### ON PETITION FOR REHEARING AND PETITION FOR RE-HEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

Stevens, Circuit Judge, dissented and filed opinion.