413 F.2d 9
 Alfred GRIFFIN, Plaintiff-Appellee-Cross-Appellant,
v.
MISSOURI PACIFIC RAILROAD COMPANY, Defendant, and The Kansas
City Southern Railway Company,
Defendant-Appellant-Cross-Appellee.
 No. 26579.
 United States Court of Appeals Fifth Circuit.
 June 27, 1969.
 
 1
 Arthur R. Carmody, Jr., Shreveport, La., Wilkinson, Woods, Carmody, Meadows & Hall, Shreveport, La., for defendant-appellant.
 
 
 2
 Everett R. Scott, Jr., Kaufman, Anderson, Leithead, Scott & Boudreau, Lake Charles, La., for Missouri Pac. R. Co.
 
 
 3
 Russell T. Tritico, Lake Charles, La., for appellee.
 
 
 4
 V. Farley Sonnier, Lafayette, La., A. Lane Plauche, Lake Charles, La., for other interested parties.
 
 
 5
 Before COLEMAN and GODBOLD, Circuit Judges, and SCOTT, District Judge.
 
 SCOTT, District Judge:
 
 6
 This is an appeal by The Kansas City Southern Railway Company, defendant- appellant, from a judgment awarding Alfred Griffin, a laborer employed by The Port of Lake Charles, Louisiana, $26,117.18 in damages for personal injuries suffered when a 30-foot iron rail was shaken loose from the bulkhead side-wall of a railroad 'hopper car'. Jurisdiction was based on diversity of citizenship, 28 U.S.C. 1332. We affirm.
 
 
 7
 Hopper Car No. 5816, built in 1941 and rebuilt in 1962, was owned by the appellant The Kansas City Southern Railway Company. The bulkheads along either side of this car were reinforced with a channel iron which was welded to the bulkhead for additional support. The car had been used continuously between Cities Service Refinery in Lake Charles and The Port of Lake Charles at the Lake Charles Harbor and Terminal District from 1962 until the time of the accident. It was one of several hopper cars which were loaded with petroleum coke at the Cities Service Refinery and taken by the Southern Pacific Railroad to the Southern Pacific-- Kansas City Southern Interchange in Lake Charles where a Kansas City Southern crew inspected the car and then moved it over its tracks as connecting carrier to the Missouri Pacific Railroad at the Kansas City Southern-- Missouri Pacific interchange. There a Missouri Pacific crew took over and two car inspectors made an additional inspection for safety appliances (described as 'perfunctory' by the trial court). The Missouri Pacific crew carried the car over its tracks to the Port. The Port made a third inspection of the car.
 
 
 8
 Two days after the car arrived at the Port it was moved to the unloading area and ultimately positioned under a two-ton vibrator machine to assist in the customary unloading of the bulk coke. Griffin had been employed only a few hours before the unloading of the car took place. It was his job to open the hopper doors with a sledge hammer and to stand by to see that the coke was unloaded. Another man stood on the opposite side of the car, and a third man operated the vibrator.
 
 
 9
 The vibrator was lowered so that its metal claws grasped the outside bulkhead of the car, then the hopper doors under the car were opened and the vibrator turned on. The vibrator shook the car for about 30 minutes, and as it was being moved away the channel iron became dislodged and fell on Griffin. It is unclear as to whether the vibrator was actually in operation when the rail shook loose.
 
 
 10
 Griffin brought suit in the Western District of Louisiana and joined the Missouri Pacific Railroad Company and The Kansas City Southern Railway Company as defendants. The Port was not joined, since it had entered into a state court-approved settlement to pay workmen's compensation benefits to Griffin. The Bituminous Casualty Corporation, insurer for the Port intervened to recover the workmen's compensation payments. The case was tried without a jury.
 
 
 11
 The Missouri Pacific was made a defendant on the ground that it was negligent in delivering the car to the Port in a dangerous condition, which a reasonably careful inspection would have disclosed. However, the Court found that the car had a 'latent defect' which could not have been discovered in a routine inspection and the Missouri Pacific was exonerated. The Court also found that the Port was negligent in its excessive use of the vibrator. It rendered a verdict against Kansas City Southern, holding that it had furnished a car which was not reasonably safe for the unloading process, and that the furnishing of the car in that condition was the proximate cause of the accident.
 
 
 12
 The Court further stated that Kansas City Southern, being well acquainted with the effects of the vibrator, should not have furnished cars with a structural defect in the welding. The plaintiff was awarded $26,117.18 and, from that amount, $5,087.18 was paid to the intervenor, Bituminous Casualty Corporation.
 
 
 13
 All of the appellant's allegations are closely related and consequently they will be discussed together. In holding for Griffin, the Court made the following findings of fact: The car, delivered to Kansas City Southern in 1962, was not made specifically for unloading service of the type which would subject it to the shaking process of the vibrator. As it was moved to the Port, Missouri Pacific employees made a 'perfunctory' inspection for safety appliances. When the car was placed under the vibrator it appeared in good condition; there was no evidence that the support rail was loose before the shaking began.
 
 
 14
 The Court also found that for a 'long time these channel irons on this type car were being loosened and dislodged by the 'shaking' process'. There was testimony by the mechanical foreman of Kansas City Southern that two of every ten cars returned from the Port revealed loosened channel irons. The Kansas City Southern knew that Port employees worked alongside the cars while they were unloaded. The channel iron on the car in question was held by one or two tack welds, not by a continuous seam weld, when it arrived at the Port.[1] The Court further found that Kansas City Southern knew the effect of the shaking process on the car and knew or should have known that the shaking might dislodge the irons.
 
 
 15
 From these facts the Court concluded that the car was not reasonably safe for the use to which Kansas City Southern knew it was being put, and that the furnishing of the unsafe car was the proximate cause of Griffin's injury. While so doing, the Judge noted that the negligence of the Port was obvious, as they too were aware of the condition of the car as the cars entered the Port and of the effects of the vibrator upon the bulkhead rails.
 
 
 16
 Much of the appellant's argument challenges the findings of fact by the lower court:
 
 
 17
 (1) That the channel iron was insecurely welded;
 
 
 18
 (2) That Kansas City Southern knew or should have known of the defect; and
 
 
 19
 (3) That Kansas City Southern knew of the use to which the car would be put.
 
 
 20
 With respect to these contentions of factual errors, the appellate court is guided by Federal Rule of Civil Procedure 52(a), which provides in part that:
 
 
 21
 'Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witness'.
 
 
 22
 This Court has adhered to that rule in many instances. As it has previously said:
 
 
 23
 'A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. Where the evidence would support a conclusion either way, a choice by the trial judge between two permissible views of the weight of the evidence is not clearly erroneous, and the fact that the trial judge totally rejected an opposed view impeaches neither his impartiality nor the propriety of his conclusions'. Chaney v. City of Galveston, 368 F.2d 774, 776 (5th Cir. 1966).
 
 
 24
 The burden of proving that the findings are clearly erroneous is, of course, on the party attacking them. Cedillo v. Standard Oil Co. of Texas, 291 F.2d 246 (5th Cir. 1961).
 
 
 25
 On the question as to whether the rail fell because of defective welding, three witnesses were called. One, a lay witness, testified that the iron was attached by only one of two welds, thus creating a defective condition and ultimately causing the break. Two expert witnesses testified that the bar gave only an appearance of being welded in only a few places but was actually welded in a continuous seam. It was their opinion that the vibrations from the vibrator caused the break.
 
 
 26
 The appellant contends that the Court erred in not accepting the experts' testimony. However, it must be borne in mind that:
 
 
 27
 '* * * this Court has repeatedly held that a trier of facts need not accept the opinion testimony of expert witnesses, even though uncontradicted'. Boon Enterprises, Inc. v. Carstairs, 312 F.2d 323 (5th Cir. 1963).
 
 
 28
 The appellant denies that it knew of the alleged defects but such a contention, even if true, is not conclusive. Since this is a diversity action, Louisiana substantive law is controlling. Chicago, R.I. & P.R. Co. v. McClanahan, 173 F.2d 833 (5th Cir. 1949). The Louisiana Court of Appeals in a similar factual situation made the following observations:
 
 
 29
 'The car furnished by defendant to the shipper in this case was defective and in an unsafe state of repair. If the defendant knew not of these circumstances, to exculpate itself from liability for plaintiff's damages it became encumbent on defendant to show that the unsafe condition of the car could not have been discovered upon a due inspection.' Baxter v. Texas & Pacific Railway Co., 102 So.2d 97 (La.App.1958).
 
 
 30
 In Baxter the railroad car door fell upon plaintiff after the consignee's employees had opened it half way in the usual manner using only their bare hands.
 
 
 31
 There was no direct evidence that this particular car had been the subject of prior complaints. However there was testimony by one of the appellant's mechanical foremen that ever since the Kansas City Southern cars were being shuttled back and forth to the Port the channel irons on their cars had been giving the railroad trouble due to the shaking process which loosened them. He estimated that two of every ten coal cars required repairs to the channel irons after the shaking process at the Port. In view of this, it cannot be said that the Court's finding that the appellant knew or should have known of the defective condition was clearly erroneous.
 
 
 32
 The question then raised is whether the appellant was negligent and, if so, whether its negligence was a proximate cause of Griffin's injury. The furnishing or delivery of a defective car to the originating shipper, not the original ownership of the car, is the test as to the existence of a duty and tort liability with respect to a defect. 75 C.J.S. Railroads 924d, p. 335.
 
 
 33
 While a connecting carrier has only the duty to make a reasonable external inspection for patent defects of the cars received from another carrier, Smith v. Louisville & Nashville R. Co., 267 F.Supp. 716, 718 (S.D.Ohio, 1966), the duty of the carrier who furnishes the car is greater. This latter duty was ably stated in Davis v. St. Louis Southwestern Ry. Co.,106 F.Supp. 547 (W.D.La.1952); affirmed 204 F.2d 251 (5th Cir. 1953), as follows:
 
 
 34
 '* * * the Missouri Pacific furnished the car and had the best opportunity to determine its condition while thus unloaded, and was under a high duty to see that it was in condition to reasonably serve the purpose for which it was intended particularly in view of its proximity to and knowledge of the business of (the consignee)'. Id. 106 F.Supp. at 551.
 
 
 35
 In Davis the plaintiff was awarded damages for personal injuries suffered by him when the end gate of a gondola which he was unloading fell inward upon his right leg.
 
 
 36
 By not discovering defects that it should have known and thereby delivering the car to the Cities Service Refinery in an unsafe condition, appellant failed to exercise ordinary care to see that the car was in a reasonably safe state of repair; therefore, there was substantial evidence to support the lower court's conclusion that the appellant was negligent. Cf. Sykes v. St. Louis & S.F.R. Co., 178 Mo. 693, 77 S.W. 723, 728 (1903); 75 C.J.S. Railroads 924.
 
 
 37
 Appellant claims that the act of furnishing a car which ultimately gave way to tremendous physical pressures applied by a third person is not the direct proximate cause of this accident. As to the question of proximate cause:
 
 
 38
 'It is fundamental that negligence is not actionable unless it is a cause in fact of the harm for which recovery is sought. It need not, of course, be the sole cause. Negligence is a cause in fact of the harm to another if it was a substantial factor in bringing about the harm. * * * 'The burden of proving this causal link is upon the plaintiff. Recognizing that the fact of causation is not susceptible of proof to a mathematical certainty, the law requires only that the evidence show that it is more probable than not that the harm was caused by the tortious conduct of the defendant. Stated differently, it must appear that it is more likely than not that the harm would have been averted but for the negligence of the defendant'. Perkins v. Texas and New Orleans R. Co., 243 La. 829, 147 So.2d 646, 648 (1962).
 
 
 39
 Applying the findings of fact to this legal proposition, the court below was justified in finding that the appellant's negligence was a proximate cause of the plaintiff's injury.
 
 
 40
 It is next argued that Kansas City Southern is not liable to Griffin as an employee of a consignee because the condition causing the accident was caused by or known to the consignee, the Port. However, it is clear that Griffin as an employee of The Port of Lake Charles stood in the position of an invitee to whom Kansas City Southern owed a duty of reasonable care. Chicago, R.I. & P.R. Co. v. Williams, 245 F.2d 397, 402 (8th Cir. 1957), Cert. denied 355 U.S. 855, 78 S.Ct. 83, 2 L.Ed.2d 63 (1957). Kansas City Southern cannot impose upon another its duty as a carrier to furnish a car reasonably safe for the purpose for which it was intended. This follows for the reason that the consignee has a right to assume that cars furnished have been inspected by the supplier and found reasonably safe. Cf. Waldron v. Director General of Railroads, 266 F. 196, 198 (4th Cir. 1920). The consequences of the intervening act of the vibrator could have been reasonably anticipated by Kansas City Southern.
 
 
 41
 Both parties contest the award of damages. The only physician who testified stated that Griffin, a 40-year-old unskilled laborer, had a fifteen percent partial permanent disability of his body as a whole and a twenty percent partial permanent disability of his left ankle. Griffin sustained in general a fracture of the medial malleolus of the left ankle and a fracture of the transverse process of the first and second lumbar vertebrae on the right. The physician further stated that he considered that the plaintiff's injury was comparable to a person with a ruptured disc who is left with a ten to twenty percent disability. Medical bills amounted to $1,117.18.
 
 
 42
 The Court, noting that most disc cases resulted in awards between $30,000.00 and $50,000.00, awarded $25,000.00 to Griffin, plus the $1,117.18 for medical bills. In view of this, it cannot be said that the award is excessive. On the other hand, neither is the award 'so inadequate as to be clearly erroneous'. Chesser v. United States, 387 F.2d 119, 120 (5th Cir. 1967). The award should be affirmed.
 
 
 43
 The findings of the trial judge being supported by the evidence, and no error of law appearing, the judgment appealed from is affirmed.
 
 
 
 [1]
 The channel iron was normally held in place atop the sidewalls of the car by a series of intermittent 'tack welds' spaced aproximately nine to ten inches apart