## In re C.W. BAILEY and Joyce Bailey, Debtors.

## C.W. BAILEY and Joyce Bailey, Appellants,

v.

## SUMPTER COUNTY FARMERS' MARKET and Donald Nelson, Appellees.

### No. 90–724–CIV–T–17(B).

### Bankruptcy No. 87–3627–8B1.

United States District Court, M.D. Florida, Tampa Division.

Feb. 26, 1991.

Cindy Lou Turner, Stichter & Riedel, P.A., Tampa, Fla., for debtors and appellants.

Donald Gunnar Jacobsen, Lane, Trohn, Clarke, Bertrand & Williams, P.A., Lakeland, Fla., for appellees.

## ORDER ON APPEAL

KOVACHEVICH, District Judge.

This cause is before the Court on appeal from the Order on Objection to Claims No. 14 and No. 15 in Bankruptcy Case No. 87–3627–8B1, entered March 21, 1990, 112 B.R. 449, and also from the Order Denying Motion For Rehearing or Reconsideration entered by the Bankruptcy Court on April 10, 1990, by Chief Bankruptcy Judge Alexander L. Paskay.

## ISSUES

I. Whether the lower court erred in holding that the Order entered by the Department of Agriculture constituted a prohibition against the establishment of Interstate Cattle Company, Inc. (ICC) so as to render establishment of this corporation an "evasion of the law," warranting the piercing of the corporate veil.

II. Whether the lower court's finding that personal liability should be imposed on Appellants for engaging in "improper conduct" in forming ICC for the "specific intention of circumventing the law," was clearly erroneous.

## FACTS

The claims of Appellees, Donald Nelson and the Sumpter County Farmers' Market, arose as a result of their delivery of cattle to the International Cattle Company, Inc. (ICC). ICC was owned entirely by one of the Appellants, Mr. C.W. Bailey.

Prior to 1977, Michael Tomkow, Dwight L. Crum, and Cecil Yates owned and operated a corporation known as Southern Livestock, Inc. (Southern), which was engaged in the business of buying and selling cattle. Mr. Bailey was not involved in Southern. In 1977 the Packers and Stockyards Administration, United States Department of Agriculture, issued a cease-and-desist order enjoining Southern and, "its officers, directors, agents, employees, successors, and assigns, directly or through any corporation or any device, in connection with its operations subject to the Act (Packers and Stockyards Act of 1921, 7 U.S.C. §§ 181–229)," from operating in the livestock business until certain conditions were met. Following the entry of this cease-and-desist order, Southern ceased doing business.

In late 1977, Mr. Crum approached Mr. Bailey and requested that Mr. Bailey act as an officer and sole shareholder of a separate corporation known as ICC. The purpose of ICC was to carry on some of the cattle business previously conducted by Southern. Mr. Bailey was apparently recruited for this position because the principals of Southern were prohibited from operating ICC due to a lack of an equity position as required by the Department of Agriculture, and because of the 1977 cease-and-desist order enumerated above. Mr. Bailey invested $500.00 in ICC and agreed to act as president and sole shareholder of the company. The day-to-day operations of ICC were turned over to Mr. Tomkow, Mr. Crum, and Mr. Yates.

Through ICC, the three principals of Southern, Mr. Tomkow, Mr. Crum, and Mr. Yates, continued operation of the cattle order/buying business that was previously performed by Southern. During the following years, ICC leased facilities from Southern and paid $2.00 per head for cattle passing through Southern's facilities. Cattle passed through Southern's facilities at a rate of 2000–3000 cattle per week. Mr. Tomkow testified that ICC essentially continued on with that part of Southern's business that had been profitable and that ICC used "just about everything" Southern used in its business, including Southern's customers and its goodwill.

Mr. Bailey's duties as ICC's administrator included executing all of the corporate documentation necessary to maintain ICC as an active corporation engaged in the livestock business. In 1980, it became apparent that ICC began to suffer from some of the same financial difficulties suffered previously by Southern. According to his testimony, Mr. Bailey became aware in 1981 that ICC was in need of money and that there were discrepancies on the books of the corporation. In fact, the other Appellant, Joyce Bailey, was also an officer of ICC during 1981. Notwithstanding these financial problems, Mr. Bailey allowed ICC to continue its business operations, including the buying of cattle, even though the corporation continued to suffer losses. Mr. Bailey testified that he was well aware that ICC was heavily in debt before Appellees delivered their cattle to ICC. In November 1981, ICC ceased operating as a business. At that time ICC was indebted to both Appellees, even though some of the debts were repaid out of the estate of the deceased Mr. Tomkow.

In an earlier state court proceeding, *Baker Farms, Inc. v. International Cattle*

*Company,* No. GCG 81–3642 (Fla. 10th Cir. Ct.), a jury verdict pierced ICC's corporate veil and held Mr. Bailey, among others, personally liable for ICC's corporate obligations. In *Baker Farms,* the final judgement rendered against Mr. Bailey was affirmed *per curiam* by Florida's Second District Court of Appeal, December 18, 1985. Similarly, in 1985, Appellees initiated suit against Appellants in the same court as *Baker Farms* in an attempt to impose liability on ICC, and further, to pierce the corporate veil of ICC in order to impose personal liability on Appellants as officers and sole shareholders of ICC. On July 2, 1987, Appellants filed a Chapter 11 Petition staying all state court proceedings against them.

Appellants contend that ICC's separate, corporate existence should be upheld and personal liability should not be rendered against them because certain indicia of fraud or ulterior motive seem to be lacking. Appellants also rely on their apparent lack of knowledge regarding the Department of Agriculture's cease-and-desist order, and that there is no proof Appellants were involved in any fraudulent activity or had any other ulterior motive regarding their participation in ICC. Mr. Bailey never loaned ICC any money, nor did he borrow money from the company. In fact, Mr. Bailey did not engage in any transactions with ICC, other than his administrative duties as the company's president. Additionally, ICC paid its federal and state taxes and observed the requisite corporate formalities required by the State of Florida to maintain its corporate status.

After a trial which revealed these facts, the Bankruptcy Court determined that ICC was created for the purpose of continuing the business of Southern and to avoid the cease-and-desist order issued by the Department of Agriculture. Further, the Bankruptcy Court held that the corporate entity of ICC should be disregarded and that personal liability should be imposed upon Appellants due to their improper conduct in forming ICC with the specific intention of circumventing the law.

## STANDARDS OF APPELLATE REVIEW

The burden is squarely on Appellant to show that a finding of the Bankruptcy Court is clearly erroneous, *Griffin v. Missouri Pacific Railway Co.,* 413 F.2d 9 (5th Cir.1969); Bankruptcy Rule 8013. Reversal of a finding of fact is only proper when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Inter–Cities Navigation Corp. v. United States,* 608 F.2d 1079, 1082 (5th Cir.1979). However, due regard is given to the opportunity of the trial court to "judge the credibility of the witnesses." Bankruptcy Rule 8013. Appellants are entitled to an independent *de novo* review of all conclusions of law and the legal significance accorded to the facts. *In re Owen,* 86 B.R. 691 (Bankr.M.D.Fla.1988).

This Court has carefully reviewed the Order On Objection to Claims of Judge Paskay, as well as the briefs of both parties. Under the standards quoted above, the Court concludes that the findings of fact contained within the order are not clearly erroneous. The Court also finds that the Bankruptcy Court's conclusions of law are sound. Accordingly, this Court affirms the ruling of the Bankruptcy Court.

## DISCUSSION

The first matter for discussion is whether the Bankruptcy Court correctly held that the order entered by the Department of Agriculture against Southern prohibited establishment of ICC so as to render the formation of ICC an evasion of the law, warranting piercing of the corporate veil. This Court is confident that the Bankruptcy Court properly held that ICC was reactivated and operated by Appellants to carry on Southern's livestock order buying business and to avoid the cease-and-desist order issued by the Packers and Stockyards Administration, Department of Agriculture in 1977. The Department of Agriculture's or-

der expressly enjoined Southern and, "its officers, directors, agents, employees, successors, and assigns, directly or through any corporation or any device ..." from operating in the livestock business until certain conditions were met.

Appellants argue that the cease-and-desist order entered by the Department of Agriculture in 1977 did not apply to Mr. Bailey since he was not a party to the original administrative proceeding giving rise to the order. Additionally, Appellants contend that they should not be responsible for the debts of ICC because they had no knowledge of the order or proceedings before the Department of Agriculture.

Both of these arguments are without merit. Mr. Bailey was the president and sole shareholder of ICC. The record is replete with evidence that ICC utilized Southern's resources to continue in the very business the Department of Agriculture prohibited in its 1977 order. Even though Mr. Bailey may not have been previously affiliated with Southern, he joined with Southern's principals, Mr. Tomkow, Mr. Yates, and Mr. Crum, to form ICC and to evade the Department of Agriculture's 1977 cease-and-desist order prohibiting "successors and assigns," as well as "officers" of Southern from participating in the livestock business.

Although Mr. Bailey did not confess that he specifically intended to circumvent the law by forming ICC in contravention of the Department of Agriculture's cease-and-desist order, from the surrounding facts and circumstances the Bankruptcy Court properly found Mr. Bailey's conduct to be "improper," and that Mr. Bailey had "specific intention to circumvent the law" during his tenure as president and sole shareholder of ICC. Mr. Bailey's friends and associates, Mr. Crum, Mr. Yates, and Mr. Tomkow were barred from operating Southern because of the cease-and-desist order. The solution to this proscription was to use ICC, "a corporate shell," for which $500.00 was paid by Mr. Bailey, to continue Southern's livestock business.

Even though at trial Mr. Bailey claimed a lack of knowledge as to the contents of the order issued by the Department of Agriculture in 1977, he testified before the Bankruptcy Court that he was aware that Southern would not have been able to continue operations because of its inability to comply with the requirements of the Packers and Stockyards Act. The impropriety of this evasion of the law is patent. Even if Mr. Bailey did not have knowledge of the precise details of the cease-and-desist order rendered by the Department of Agriculture, the transaction he engaged in was a sham. Based on Mr. Bailey's testimony and the facts and circumstances surrounding the transaction, the Bankruptcy Court's determination that Appellants conduct was improper in forming ICC for the specific intention of circumventing the law is not clearly erroneous.

In order to pierce the corporate veil and disregard the separate identity of a corporation and its stockholder one must prove improper conduct. *In re Duque Rodriguez*, 77 B.R. 944, 945 (Bankr.S.D.Fla. 1987). Appellants' claim that it is necessary to prove fraud on the corporation's creditors in order to pierce the corporate veil is not supported by the law. In order to pierce the corporate veil it must be shown that the corporation was formed or used to mislead creditors or that it engaged in some illegal action. *Id.* at 946. In situations where fraud or illegal acts are attempted, the corporate fiction will be disregarded by courts, and the acts of the real parties dealt with as though no corporation had been formed. *Dania Jai–Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1117 (Fla. 1984).

The Court having reviewed the record in this cause concludes that there is sufficient evidence to support the Bankruptcy Judge as to this issue. Since it is clear that ICC's resumption of Southern's cattle business violated the Department of Agriculture's 1977 cease-and-desist order, there is no doubt that ICC was formed and operated for an illegal purpose. Since the resulting illegality enabled ICC's character as a corporate entity to be properly disregarded, the Bankruptcy Court's order holding Ap-

pellants personally liable for ICC's debt to the Appellees is not clearly erroneous.

ORDERED that the Order on Objection to Claims No. 14 and 15 entered on March 21, 1990, and the Order Denying Motion For Rehearing or Reconsideration entered on April 10, 1990 by Judge Paskay be affirmed. The Clerk of the Court is directed to enter judgment for Appellees, in accordance with this Order.

DONE AND ORDERED.