# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-60226
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

October 20, 2014

Lyle W. Cayce
Clerk

In the Matter of:  GREGORY SCOTT DALTON,

> Debtor

-----------------------------

GREGORY SCOTT DALTON, doing business as Louisville Electronics,

> Appellant

v.

CELLULAR SOUTH, INCORPORATED,

> Appellee

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:13-CV-107

Before BENAVIDES, SOUTHWICK, and COSTA, Circuit Judges.

PER CURIAM:*

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-60226

This action involves the termination of an agency relationship between Gregory Scott Dalton ("Dalton") and Cellular South, Inc. ("Cellular South"). The case was originally brought by Cellular South in the Circuit Court of Winston County, Mississippi to seek a declaratory judgment that Cellular South had complied with the agency agreement ("Agreement") between Dalton and Cellular South when it terminated the Agreement, and that it owed nothing further to Dalton. Dalton counterclaimed for wrongful termination. Both parties filed for summary judgment, and the court granted summary judgment to Cellular South. On appeal, the Mississippi Supreme Court reversed on the grounds that the Agreement was ambiguous, and remanded to the lower court for fact-finding by a jury. Dalton then filed for bankruptcy, and the case was removed to bankruptcy court. The bankruptcy court conducted a bench trial and found that Cellular South had not breached the Agreement when it terminated the Agreement, and that even if a breach had occurred, that Dalton failed to establish a claim for damages. It granted declaratory relief to Cellular South and dismissed Dalton's counterclaim. The district court affirmed the determination of the bankruptcy court. Dalton now appeals.

When reviewing the decision of a district court that sits as an appellate court in review of a bankruptcy court, we apply "the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *In re Gerhardt*, 348 F.3d 89, 91 (5th Cir. 2003). We review findings of fact for clear error and conclusions of law *de novo. Id.* While the question of whether a contract is ambiguous is a question of law to be reviewed *de novo*, a finding of fact as to the parties' intent to resolve that ambiguity is reviewed for clear error. *See McLane Foodservice, Inc. v. Table Rock Rests., L.L.C.*, 736 F.3d 375, 377 (5th Cir. 2013). Because the Mississippi Supreme Court found that the Agreement was ambiguous and that "[w]hether [Cellular South] honored or breached the contract [was] a task for a jury," *Dalton v.*

2

No. 14-60226

*Cellular South, Inc.*, 20 So. 3d 1227, 1233 (Miss. 2009), the question before the bankruptcy court and district court was a factual question that we review for clear error.

The following provisions of the Agreement are at issue in the termination of Dalton's agency:

> 3.1 <u>Term</u>: The term of the Agreement shall be one year, commencing on the date specified in Exhibit D of this Agreement, unless otherwise terminated or renewed pursuant to the provisions hereinafter provided. Cellular [South] is cognizant of the increasing value of the Agency relationship to a successful AGENT and therefore will terminate a successful Agency relationship only if Cellular [South] determines that the continuation of the Agency relationship would be detrimental to the overall well being [sic], reputation and goodwill of Cellular [South].
>
> 3.3 <u>Renewal</u>: This Agreement shall be automatically renewed for one-year terms unless terminated as herein provided.
>
> 3.4 <u>Default</u>: In the event AGENT fails to perform any of its obligations under this Agreement and such failure continues unremedied for a period of thirty (30) days after written notice is given by Cellular [South] to AGENT, then Cellular [South] may thereupon elect to cancel and terminate this Agreement, which termination shall be effective immediately upon the expiration of said thirty-day period.
>
> 3.5 <u>Termination</u>: Either party may terminate this Agreement by giving the other party written notice of its desire to terminate at least thirty (30) days prior to the intended date of termination.
>
> Further, Cellular [South] shall have the right to terminate this Agreement effective upon written notice if:
>
> A) AGENT makes an assignment for the benefit of creditors;
> B) An order for relief under Title 11 of the United States Code is entered by any United State [sic] Court against AGENT;
> C) A trustee or receiver of any substantial part of the AGENT's assets is appointed by any Court; or

> D) AGENT (1) has made any material misrepresentation or omission in its application to establish any agency relationship with Cellular [South] or AGENT (or any principal thereof) is convicted of or pleads no contest to a felony or other crime of [sic] offense that is likely in Cellular [South]'s sole opinion to adversely affect the reputation of Cellular [South] or its affiliated companies or the goodwill associated with the [trademarks and service marks, symbols, and/or logos and other identifying indicia]; (2) attempts to make an unauthorized assignment of this Agreement; (3) receives a notice of violation of the terms or conditions of any license or permit required by AGENT or its employees in the conduct of AGENT's Cellular Telephone Service business and fails to correct such violation; (4) fails to comply with any provision of this Agreement, or any tariff relating to Cellular Telephone Service and does not correct such failure within thirty (30) days after written notice of such failure to comply is delivered to AGENT; or (5) fails to comply with any material provisions of this Agreement, or any tariff relating to Cellular Telephone Service, whether or not such failures to comply are corrected after notice thereof is delivered to AGENT.

The Mississippi Supreme Court found that these provisions conflicted with each other and were ambiguous when read together:

> Clause 3.1 calls for a one-year term and restricts the right of [Cellular South] to terminate the agreement as to "a successful AGENT" and "a successful Agency relationship." Clause 3.3 allows for automatic one-year renewals. Clause 3.5 allows either party to terminate at will. Clause 3.4 and the unnumbered paragraph following clause 3.5 allow [Cellular South] to terminate with cause under certain circumstances. Thus, reasonable minds could reach different conclusions after reading the whole contract, in discerning the intent of the parties, while giving effect to each separate clause.

*Id.* at 1233. Finding that "[o]nce a contract is found to be ambiguous, resolution of any uncertainties will be against the drafter of the contract," *id.* at 1232, the court then found that the contract language "require[d] the use of parol or

extrinsic evidence to determine if Dalton is eligible for 3.1 consideration, as 3.1 applies only to 'a successful AGENT' with 'a successful Agency relationship' which cannot be determined within the four corners of the contract," *id.* at 1233. On this basis, the court found that the lower court had erred in holding that the contract was unambiguous. *Id.* at 1235. The court also found that the lower court had erred in granting summary judgment to Cellular South on the basis of Cellular South's one affidavit from its president and Chief Executive Officer, Victor Hugo "Hu" Meena, which the court found to be "conclusory" and "self-serving" and thus "insufficient as a basis to grant summary judgment," *id.* at 1233-34 (citing *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996); *Hubbard v. Wansley*, 954 So. 2d 951, 965-66 (Miss. 2007); *Burton v. Choctaw Cnty.*, 730 So. 2d 1, 9 (Miss. 1997)), especially considering the need to view the evidence in the light most favorable to the non-moving party at the summary judgment stage, *id.* at 1234 (citing *Daniels v. GNB, Inc.*, 629 So. 2d 595, 599 (Miss. 1993)).

Dalton argues that the bankruptcy court and district court committed clear error by not following the rulings of the Mississippi Supreme Court. We agree with the district court that Dalton's interpretation of the Mississippi Supreme Court's ruling is incorrect. The bankruptcy court was tasked with making a factual determination as to whether Cellular South terminated Dalton's agency in compliance with the Agreement. The bankruptcy court heard evidence—including in-court testimony by Dalton and Meena—and determined that Cellular South's reasons for terminating its entire agency program, including Dalton's agency, complied with the Agreement. Unlike the Mississippi Supreme Court, the bankruptcy court was not bound to view the evidence in the light most favorable to Dalton. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000) (clarifying that making credibility determinations and weighing evidence are not for the summary

judgment and judgment as a matter of law stages, but rather jury functions). Thus, it was appropriate for the bankruptcy court to consider Meena's affidavit, along with his testimony at trial and the other evidence presented, to come to its conclusions.

On appeal, Dalton argues that, under Section 3.1 of the Agreement, Cellular South could terminate his agency only if it made a determination that a continuation of his specific agency would be detrimental to the overall well-being, reputation, and goodwill of Cellular South. He argues that it was clear error for the lower courts to rule in favor of Cellular South without any evidence that his specific agency was detrimental to the overall well-being, reputation, and goodwill of Cellular South. However, the bankruptcy court made a determination as to the entire agency program, of which Dalton was a part. Specifically, the court found that the decision was rooted in, *inter alia*, administrative burdens of managing agents and excessive "churn" (rate of customer loss) among customers of agents compared to customers through company-owned stores and online outlets. Because there was a sufficient basis for terminating the Agreement under Section 3.1, we find it inapposite that Meena believed the Agreement was terminable at will. We find that Dalton has not met its burden of showing that the factual findings are clearly erroneous. *See Griffin v. Mo. Pac. R.R. Co.*, 413 F.2d 9, 13 (5th Cir. 1969).

Because we find that there was no clear error by the district court as to the contract interpretation issue, we need not consider the damages issue.

The district court's decision is AFFIRMED.